## THE STATE v. DAVIS, Appellant.

**Division Two, March 6, 1906.**

1. **JURISDICTION: Criminal Action: Deferred Judgment.** Where a criminal cause is submitted to a justice of the peace, he does not lose jurisdiction to render a verdict and judgment by taking it under advisement until the next day or for a reasonable time.

2. **INSTRUCTIONS: Blank Form of Verdict.** A blank form of verdict for the State in a criminal case should be prefaced by a direction to the jury to use it if they find the defendant guil-

ty. But an instruction with those prefatory words omitted will not be held to direct the jury to find defendant guilty or as confusing and misleading them, if they are fully instructed on the subject of reasonable doubt and all other constituent elements of the crime charged.

3. **PRACTICING MEDICINE: No License: Non-Resident: Blank Prescription and Order.** Defendant, a resident of Illinois, had a room at a hotel in this State, professed to be a physician and held himself out as such. A young man, afflicted with blood-poisoning, called upon him, as a physician, at his room, for treatment, and defendant diagnosed his case in the usual way of practicing physicians and prescribed remedies; the prescription, however, was in the form of a blank, to be sent to Illinois, and then defendant sent bottles of medicines from there, and the patient took the medicine according to defendant's directions and according to the printed directions on the bottle, and paid defendant at the rate of five dollars a month, and the first Monday in each month defendant came to the hotel for the purpose of seeing the patient. *Held,* that defendant was practicing medicine within this State within the meaning of the statute, and, having no license, he was guilty of violating the statute, and is subject to its penalties.

4. ——: ——: **Vested Rights: Constitutional Statute.** The State has the right to determine upon what conditions and under what circumstances its citizens shall practice medicine, and in doing so it in no way interferes with any vested rights. The fact that defendant many years ago before the statute was enacted and before he left this State was a practicing physician here in no way invalidates the subsequently enacted statute which requires him to obtain a license from this State to practice medicine here, nor does such statute interfere with any vested right he previously enjoyed. The primary object of the statute was to protect the people from imposition by persons not qualified to practice medicine, and to fix a standard by which their qualifications might be determined, and not to suppress or prohibit the practice of medicine.

Appeal from Scotland Circuit Court.—*Hon Charles D. Stewart,* Judge.

AFFIRMED.

*Smoot, Boyd & Smoot* for appellant.

(1) The justice lost jurisdiction of the case by taking it under advisement and in not rendering judg-

ment on the day of trial and at the place of trial, when the cause was submitted to him. A jury must be kept together, even in civil cases, until a verdict is rendered, or they are discharged. Sec. 4000, R. S. 1899. The same is true of criminal cases. Sec. 2771, R. S. 1899. In civil cases a justice may defer judgment three days after submission. Sec. 4011, R. S. 1899. Article 12 of chapter 16 is complete in itself, and being the practice act for criminal cases before justices of the peace, must be strictly construed. It is read in vain for authority to take a case under consideration. Hobart v. Hobart, 45 Iowa 503; State v. Griffie, 118 Mo. 199; Cox v. State, 9 Mo. 181; State v. Epperson, 4 Mo. 90; City of De Soto v. Merciel, 53 Mo. App. 57. (2) The statute applies to those practicing medicine in Missouri alone. (3) The present act is unconstitutional in that it endeavors to divest vested rights. 66 Mo. 328; 46 Mo. 376. A statute may provide for the future; it may regulate the practice of medicine for those who enter the profession in the future, but the statute must be applied prospectively. 78 Mo. 188; 79 Mo. 113; 115 Mo. 184; 133 Mo. 100.

*Herbert S. Hadley,* Attorney-General, and *N. T. Gentry,* Assistant Attorney-General, for the State.

(1) The justice did not lose jurisdiction by failing to complete the trial of this cause on the day upon which the trial was begun. Many times it may occur that a trial lasts till a late hour, or the condition of the weather be such, or other circumstances may occur, that make it impossible that the trial be finished till the next morning. Certainly the authors of our criminal code did not intend to deprive a justice of jurisdiction by reason of a postponement under such circumstances. If he would have the right to postpone a trial under such circumstances, the justice would have the right to defer announcing his decision till the next day.

Stroeh v. Dogget, 65 Mo. App. 103; Pohle v. Dickman, 67 Mo. App. 381. Again, another section provides that no judgment of a justice shall be deemed invalid, stayed or in any way affected by reason of the neglect or failure of the justice to enter the same within the time prescribed, or by reason of any informality in entering or giving such judgment, or for any other default or negligence of the justice, etc. R. S. 1899, sec. 4031. (2) It is not the compounding of medicines in another state and the shipment of same into this State that is prohibited by this act, but rather the practicing of medicine in this State, without being licensed and registered. This law was enacted for the purpose of protecting unsuspecting citizens from the evil results which have so many times followed the treatment received by them from transient and traveling physicians whose conduct has been similar to that of defendant, as disclosed by the evidence in this case. This statute applies to all persons, except physicians now registered, and the Legislature had a right to exempt them. State v. Hathaway, 115 Mo. 36. (3) It is not necessary for a physician to practice any given length of time in order to come within the prohibition of this law. The holding of himself out as a physician on one occasion, the examination of one patient or the issuance of one prescription without complying with the requirements of law, is a violation of said act. State v. Bushwell, 40 Neb. 170; State v. Vandershaus, 43 N. W. 789; State v. Van Doren, 109 N. C. 871. (4) One does not acquire a vested right to practice medicine by practicing in Missouri, and then moving to another State. Each State has the right to adopt its own reasonable regulations governing such an important and responsible occupation; and any one who is capable and worthy can easily comply with same. A failure to so comply is a circumstance of value to the court and to the jury. Myer on Vested Rights, sec. 952; People v. Phippin, 70 Mich. 6; Board v. Fowler,

50 La. Ann. 1373; People v. Fulda, 52 Hun 67; Dent
v. West Virginia, 129 U. S. 123.

FOX, J.—This cause is here by appeal from a
judgment of conviction of the defendant in the Scot-
land Circuit Court for practicing medicine without a
license or any other authority so to do. This prosecu-
tion was begun before a justice of the peace of Scotland
county on February 4, 1905. Omitting formal parts
of the information it charges the offense as follows:

"John E. Luther, prosecuting attorney within and
for the county of Scotland in the State of Missouri, in-
forms John B. Montgomery, a justice of the peace of
said county of Scotland, that on the 15th day of Decem-
ber, 1904, at the county of Scotland aforesaid one John
M. Davis did unlawfully practice medicine by then and
there prescribing for, issuing medicine to and treating
one Arthur Hoover, for the cure of disease and bodily
affliction, the said John M. Davis not then and there be-
ing a licensed physician of the State of Missouri, nor
having any legal authority to practice medicine or treat
the sick and afflicted, against the peace and dignity of
the State."

This cause was first tried before the justice on an
agreed statement of facts on the 4th of April, 1905; the
cause being submitted the justice took it under advise-
ment until the next day, the 5th of April, when he ren-
dered judgment against the defendant finding him
guilty and assessing his punishment at a fine of one
hundred dollars. From this judgment defendant pros-
ecuted his appeal to the circuit court of Scotland coun-
ty. The cause came on for a hearing and trial at the
May term, 1905, of the circuit court. Before the trial
the defendant filed a motion praying for the discharge
of the defendant on the ground that upon the fact of
the transcript from the justice it appeared that the
justice had lost jurisdiction of the cause before he ren-
dered a judgment and that when he did render judg-

ment he had no jurisdiction so to do, as this was a criminal cause and the justice was without authority to take the case under advisement. This motion was by the court overruled and the trial of this cause proceeded.

We have read in detail the testimony introduced at the trial, which was substantially as follows:

The State's evidence tended to prove that one Arthur Hoover was suffering from blood poison, and learning that defendant was a good physician, went to see defendant at a hotel in Memphis, in Scotland county. The defendant told Mr. Hoover that he (defendant) was a physician, and showed Hoover some blanks with questions on them. That defendant then examined Hoover, diagnosed his case and prescribed for him. That defendant lived in Hamilton, Illinois, and sent bottles of medicine to Hoover, by express, from Warsaw, Illinois. That Hoover took the medicine according to defendant's directions and according to the instructions on the bottle; and paid defendant five dollars a month. That these payments were made to defendant and Hoover had an interview with defendant in the hotel in Memphis the first Monday in every month, beginning in November, 1904. That defendant had no diploma, no license from the State Board of Health, and was not registered as a physician in Scotland county.

The defendant's evidence tended to prove that he lived in Hamilton, Illinois, sent medicine to Mr. Hoover by express and by mail. That this medicine was sent when the patient would fill out one of defendant's printed blanks. That defendant had been practicing medicine ever since 1857, was formerly located in St. Louis, had practiced in Edina, but not been located in Missouri for a number of years. That he had the allopathic system of medicine, but had never registered in Missouri and had never been licensed by the State Board of Health.

At the close of the evidence, the court at the instance of the State, gave the following instructions:

"1. The court decares the law to be that if you find from the evidence that the defendant, John M. Davis, at the county of Scotland and State of Missouri, at any time within one year next before the filing of this information, did publicly profess to be a physician, and that by reason of his publicly professing to be a physician, one Arthur Hoover accepted his services in his professional capacity by calling upon defendant, and defendant prescribed for, treated and issued medicine to said Arthur Hoover, who was then and there a sick person; and that the defendant at the time of so prescribing for, treating or issuing medicine to said Arthur Hoover was not a registered physician of the State of Missouri and had no certificate issued by the Board of Health of the State of Missouri, authorizing him to practice medicine in the State of Missouri, you should find the defendant guilty as charged, and assess his punishment at a fine of not less than fifty dollars nor more than five hundred dollars, or at imprisonment in the county jail not less than thirty days nor more than one year, or at both such fine and imprisonment.

"2. The court declares the law to be that the defendant is presumed to be innocent until proven guilty beyond a reasonable doubt; but a doubt to authorize an acquittal must be a substantial doubt of defendant's guilt and not a mere possibility of his innocence."

In submitting the instructions the court submitted a blank form for a verdict of guilty.

At the request of the defendant the court instructed the jury as follows:

"5. The information in this cause charges the defendant with unlawfully practicing medicine by prescribing for, issuing medicine to and treating one Arthur Hoover for the cure of a disease and bodily affliction, and that the same was done in the county of Scotland and the State of Missouri, and unless you so find

and believe from the evidence beyond a reasonable doubt, you should acquit the defendant.

"6. If your verdict be for the defendant it may be in the following form:

"We, the jury, find the defendant not guilty.

"———— ————————Foreman."

Defendant requested the court to instruct the jury as follows.

"1. If you believe from all the evidence in the case that the defendant merely examined a patient in the State of Missouri and afterwards on the application of the patient sent him medicine from the State of Illinois when he so ordered and desired it, this is not practicing medicine in the State of Missouri in the meaning of the law, and you should find the defendant not guilty.

"2. The law is intended to punish only those who prescribe and administer medicine as a profession within the State of Missouri. It does not apply to physicians who live in another State and upon application of patients send medicine into the State of Missouri to be taken by said person, and before you would be authorized to find the defendant guilty you must believe beyond a reasonable doubt that he followed the profession of a physician in the State of Missouri by prescribing medicine within the State as a calling.

"3. If you believe from the evidence that the medicine prescribed by the defendant was compounded and prepared by him in the State of Illinois upon the application of patients in Missouri, and was so taken by the patient after the same was sent to Missouri, and that the defendant was a resident of the State of Illinois, then this fact would not make the defendant practicing medicine within the State of Missouri and you should find him not guilty.

"4. Before you can find defendant guilty you must find and believe from the evidence beyond a reasonable doubt that defendant has practiced medicine by treating the sick or those afflicted with bodily infirmities, by pre-

scribing and issuing medicine within this State as charged in the information and without a license so to do; and you must find from the evidence beyond a reasonable doubt that each and all of said facts occurred in this State; that is, you must find beyond a reasonable doubt that all of the acts usual for physicians of prescribing for, issuing medicine to and treating the sick took place within the State. If you find that the medicine taken by the patient, young Hoover, was prescribed, compounded, issued or prepared in another State and upon the application of the patient was sent to this State and was so taken by the patient after the same was sent to Missouri, then this fact would not make the defendant a practicing physician within the meaning of the laws of Missouri, and you should find the defendant not guilty.''

These instructions were by the court refused.

The cause being submitted to the jury upon the evidence and instructions of the court, a verdict was returned by the jury finding the defendant guilty as charged and assessing his punishment at a fine of fifty dollars. Motions for new trial and in arrest of judgment were filed and by the court overruled. Judgment was rendered in accordance with the verdict and from this judgment defendant prosecutes this appeal and the cause is now here for our consideration.

OPINION.

The record discloses numerous assignments of error as grounds for the reversal of this judgment.

I. It is insisted by appellant that the justice of the peace lost jurisdiction of this cause and erroneously rendered judgment against the defendant, for the reason that said justice had no authority to take the case under advisement from the 4th day of April, 1905, being the day upon which the case was tried and submitted, until the next day, the 5th day of April, 1905,

hence the circuit court erred in overruling appellant's motion to discharge him on that ground. We are unable to give our assent to this contention, and we are of the opinion from an examination of the statute in respect to trials in criminal cases before justices of the peace, that it is without merit. Section 2769, Revised Statutes 1899, substantially provides that upon the defendant entering his plea of not guilty, he or the prosecuting witness or prosecuting attorney may demand a jury, but if no jury be demanded the case may be tried by the justice.

There is no statute applicable to trials before justices of the peace in criminal cases which undertakes to designate, if the case is tried by the justice or even tried by a jury, the precise date of the rendition of the judgment or verdict in the cause. It is apparent, if the cause is tried by a jury and submitted to them, that they have the right to deliberate upon it, and there is no time fixed as to how long they may consider the cause as submitted before returning a verdict; and we take it that where a cause is submitted to a jury on one day and they in their jury room consider and discuss the evidence until the next day before returning a verdict, that would not in any way affect the validity of a judgment rendered upon such a verdict. We see no reason why a justice of the peace to whom a cause is submitted may not have a similar right to take the cause under advisement for a reasonable time and then render his verdict and judgment in the cause. The statute by none of its provisions prohibits such a course. The law-making power did not even deem it essential to designate in the trial of criminal cases before justices of the peace, as it has done in civil cases, the precise number of days in which a case shall be decided; therefore, we think it is manifest that no such limitations upon the justice in considering a criminal case, which has been tried before him, as is contended for by appellant, was contemplated by the statute regulating trials in criminal causes be-

fore justices of the peace. It has been ruled by some of the appellate courts of this State that if the judgment in a civil case was not rendered within three days, as designated by the statute, it is valid, notwithstanding such statute was not complied with. [Herwick v. Barbers' Supply Co., 61 Mo. App. 454; Pohle v. Dickmann, 67 Mo. App. 381.]

II. Appellant treats the form of the verdict in the event the jury find the defendant guilty, which was submitted to the jury among the instructions, as an instruction given by the court to find the defendant guilty. It is insisted that this was error and calculated to confuse and mislead the jury. We confess that it would have been much more appropriate for the court to have prefaced the submission of that form of the verdict with a direction to the jury to use it if they found the defendant guilty; however, we are convinced that the form of the verdict submitted to the jury in the manner that it was did not in any way mislead the jury. It will be noted that the court also submitted a form of the verdict at the request of the defendant with a direction that if they found the defendant not guilty they would use such form. In addition to this the court instructed the jury that the defendant was presumed to be innocent and his guilt must be established beyond a reasonable doubt. The jury were also told in the instructions that the information charged defendant with practicing medicine, treating one Arthur Hoover and so treating him in Scotland county, and that unless the jury so found and believed beyond a reasonable doubt they should acquit the defendant.

Considering all the instructions we are unable to conceive how the jury could have been misled into the belief that the form of the verdict for the State submitted to them was a direction by the court to find the defendant guilty.

III. It is insisted by appellant that, under the

proof as developed at the trial in this cause, defendant was not practicing medicine in this State as contemplated by the statute.

The law governing the subject of the practice of medicine and surgery in this State, upon which this prosecution is predicated, will be found in the Laws of 1901, pages 207-208. Section 1 of that act provides: "It shall be unlawful for any person not now a registered physician within the meaning of the law to practice medicine or surgery in any of its departments, or to profess to cure and attempt to treat the sick and others afflicted with bodily or mental infirmities, or engage in the practice of midwifery in the State of Missouri, except as hereinafter provided." Section 4 of that act provides for the recording of the license to practice medicine obtained from the Board of Health, embracing in the section a provision that for any neglect to record the license in the manner and within the time provided by the statute, the party guilty of such neglect shall be guilty of a misdemeanor. Section 5, which is specially applicable to the charge upon which the defendant was convicted, provides that "any person, except physicians now registered, practicing medicine or surgery in this State, and any person attempting to treat the sick or others afflicted with bodily or mental infirmities, without first obtaining a license from the State Board of Health, as provided in this act, shall be deemed guilty of a misdemeanor, and punished by a fine of not less than fifty dollars nor more than five hundred dollars, or by imprisonment in the county jail for a period of not less than thirty days nor more than one year, or by both such fine and imprisonment for each and every offense, and treating each patient shall be regarded as a separate offense."

The evidence in this cause is practically undisputed. The defendant had a room at the hotel in Memphis, Scotland county, Missouri, professed to be a physician and held himself out as such. Arthur Hoover

applied to him at the hotel in Scotland county, Missouri, as a physician for treatment; he diagnosed his case in the usual and ordinary way of practicing physicians and prescribed remedies; his prescription for medicine, however, was in the form of a blank, which was required to be sent to the State of Illinois, and then the defendant would send the bottles of medicine to Hoover by express from Warsaw, Illinois. Hoover took the medicine according to defendant's directions and according to the directions on the bottle. He paid the defendant at the rate of five dollars per month for such treatment; the payments were made to defendant and defendant would come to the hotel for the purpose of seeing his patient, Hoover, the first Monday in every month. This in our opinion was clearly practicing medicine in this State as contemplated by the statute. The mere fact that the medicine was sent from Illinois did not in any way alter the construction placed upon his acts that he was a practicing physician in this State.

The practice of medicine as contemplated by the provisions of the statute covering that subject, may consist only of the examination of a patient, diagnosing the cause of the trouble complained of, or by one professing to be a physician seeing the patient at stated intervals, and the indication and prescribing of remedies to be applied, and the acceptance of pay for such services. The mere fact that the remedies indicated and prescribed are sent from another State does not negative the idea that the defendant was practicing medicine or attempting to practice medicine in this State. It would not be an uncommon occurrence for a regular practicing physician of this State to examine his patients, diagnose the cause of their illness and then say to them, "The remedies I indicate and prescribe you must obtain from the State of New York." This is not a case where the physician does not come to the State and undertake to secure patients, but simply fur-

194 Sup—32

nishes blanks, which are sent to him in another State and he sends the medicine in accordance with the requests, but here we have a person coming to this State, holding himself out as a physician, has patients visit him, examines them, advises them as to the nature and cause of their trouble, indicates the remedies to be applied and accepts pay for such services. The bare statement of the two classes of cases makes manifest the distinction between them.

The proof in this cause was amply sufficient to show that the defendant was undertaking to practice his profession in Scotland county, Missouri, and it being conceded that he was not a regular registered physician in this State, and had no license from the State Board of Health to practice medicine, the testimony fully warranted the conclusion reached by the jury in their verdict.

IV. The instructions of the court given to the jury for the State and the defendant fully covered every feature of this case to which the testimony was applicable; hence there was no error in refusing the instructions requested by the defendant.

V. This leads us to the final contention of the appellant, that the statute upon which this prosecution is predicated is unconstitutional and void. This contention is predicated upon the claim that this defendant commencing in 1857 practiced medicine in this State for a number of years and finally moved to the State of Illinois and was engaged there in the practice of his profession. It is insisted that by having once practiced medicine in this State he thus secured a vested right to practice in this commonwealth whenever he saw proper. We cannot give our assent to this contention.

It is but common knowledge that the people who have ill health or whose families are troubled with disease are more easily and can be more readily imposed upon by persons who represent themselves as

physician, claiming that they can give them permanent relief, than any other class; and it may be added, that intelligence is no protection from impositions along that line, for when a man is sick or his family ill, whether he be intelligent or ignorant, they readily give an attentive ear to any sort of a doctor who claims that he can give them relief, and are at all times ready to purchase and swallow all sorts of nostrums because they are recommended by someone who claims to be a physician.

The prime object of this law upon the subject of the practice of medicine is the protection of the people from the impositions herein indicated by persons who are not sufficiently skilled in the profession to authorize them to properly administer medicine and therefore relieve the afflicted.

The evidence in this cause nowhere discloses that the defendant was a registered physician under any prior existing statute; in fact, defendant while on the stand does not disclose that he was practicing his profession in this State in 1857 and subsequent to that time in accordance with the then existing laws governing the practice of medicine; therefore, we are unable to conceive how it can be held that he had secured by virtue of his practice in this State a vested right, and there is no reason why he should not comply with the law now in force in this State if he desires to practice his profession here and reap the rewards of such practice. It was expressly ruled in People v. Fulda, 52 Hun 65, by the Supreme Court of New York, that the fact that before the enactment of a statute which compelled the taking out of a license, the defendant in that case had been practicing medicine, did not prevent the application of the statute to him, which requires as a condition the taking out of a license in order to justify his practice. The court in that case, discussing the statute which imposed the condition of taking out a license to practice medicine, used this language: ''This was part of the police regulations of the State. It was thought necessary for

the protection of the people that these safeguards should be thrown around them in reference to those who assumed to practice medicine in the community. The State has a right to determine upon what conditions and under what circumstances its citizens should be entitled to pursue any vocation. It is in no way interfering with any vested rights, nor is it a usurpation of authority which is not possessed.''

In Dent v. West Virginia, 129 U. S. 114, the same contention was made by the defendant in that case as is made in the case at bar, that is, that he had been practicing medicine within the State six years before the enactment of the law, and that the statute which undertook to impose certain conditions in order to authorize him to practice his profession, deprived him of a vested right, and was a deprivation of property without due process of law. The statute was held valid, and in discussing it the court thus stated the law: ''It is undoubtedly the right of every citizen of the United States to follow any lawful calling, business or profession he may choose, subject only to such restrictions as are imposed upon all persons of like age, sex and condition, and the right to continue the prosecution of any lawful vocation cannot be arbitrarily taken away any more than real or personal property can be thus taken. But there is no arbitrary deprivation of such right where its exercise is not permitted because of a failure to comply with conditions imposed by the State for the protection of society. The power of the State to provide for the general welfare of its people authorizes it to prescribe all such regulations as, in its judgment, will secure or tend to secure them against the consequences of ignorance and incapacity as well as of deception and fraud; and it is only when the qualifications required for the pursuit of any calling or profession have no relation to such calling or profession, or are unattainable by reasonable study and application, that

they can operate to deprive one of his right to pursue a lawful vocation.''

The principles in support of the law-making power to enact laws imposing conditions upon those who engage in the practice of medicine are very clearly stated by the Supreme Court of Louisiana in Board of Medical Examiners v. Fowler (1898), 50 La. Ann. l. c. 1373. It was said by that court that ''whenever the pursuit of any particular occupation or profession requires for the protection of the lives or health of the general public, skill, integrity, knowledge or other personal attributes or characteristics in the person pursuing it, the General Assembly has the power and the authority to have recourse to proper measure to ensure that none but persons possessing these qualifications should pursue the calling. We find this right constantly put in force by the general as well as the State governments.''

It is apparent that the General Assembly of Missouri, in the enactment of the provisions of law regulating the practice of medicine and surgery in this State, intended to fix a standard as to fitness, skill and qualification which would authorize the practice of that profession. This law does not undertake to deprive any person of a vested right, for there can be no such thing as a vested right in the practice of medicine. It does not undertake to suppress or prohibit the practice of medicine or surgery, nor to prohibit any particular person from practicing as a physician or surgeon, but it simply undertakes to require the necessary and essential qualifications for that purpose. The correctness of the conclusions as herein indicated are fully supported by the well-considered cases of this country. [Dent v. West Virginia, 129 U. S. 114; Myer on Vested Rights, sec. 952; People v. Phippin, 70 Mich. 6; Board of Med. Exam. v. Fowler, 50 La. Ann. 1358; People v. Fulda, 52 Hun (N. Y.) 67.]

We see no necessity for pursuing this subject further. It is clearly manifest that the defendant had no

vested right to practice medicine in this State by virtue of his former practice here in 1857. Upon returning to this State to practice his profession his qualifications, fitness and skill to do so must be judged by the law in force at the time he so returns, and before he will be authorized to engage in the practice of his profession and reap the rewards from such practice, there is no reason why he should not comply with the conditions imposed upon him by the law in force at the time he so undertakes to engage in the practice.

We have indicated our views upon the assignments of error as disclosed by the record before us. Nothing remains except to announce the conclusion, and that is that there was no reversible error in the trial of this cause; the statute upon which the prosecution rests is constitutional, and the judgment should be affirmed, and it is so ordered.

All concur.