**STATE of Missouri ex rel. William A. COLLET, Prosecuting Attorney in and for Jackson County, Appellant,**

v.

**Robert G. ERRINGTON, Respondent.**

No. 46211.

Supreme Court of Missouri, Division No. 2.

Oct. 13, 1958.

Motion for Rehearing or to Transfer to Court en Banc Denied Nov. 10, 1958.

William A. Collet, Prosecuting Atty. in and for Jackson County, and Joe E. Burris, Kansas City, for appellant.

No appearance for respondent.

BOHLING, Commissioner.

The State, at the relation of the prosecuting attorney of Jackson County (see § 56.060[1]), instituted this suit to enjoin the unlicensed practice of medicine by Robert G. Errington, defendant, on the ground that such practice "has become a continuing public nuisance detrimental to the public welfare and dangerous to the public health, contrary to and against the public policy of the State." The decree dismissed plaintiff's petition, and the State appealed. The State is a party and we have appellate jurisdiction. Mo.Const. Art. 5, § 3, V.A.M.S.; State ex rel. Collet v. Scopel, Mo., 316 S.W.2d 515.

Defendant's attorney filed an answer on behalf of defendant on December 10, 1953, but withdrew from the case on April 20, 1954. Thereafter defendant appeared pro se.

The State read in evidence the following portions of defendant's answer of December 10, 1953, to the charges in plaintiff's petition as admissions against interest.

1. Statutory references are to RSMo 1949, V.A.M.S., unless otherwise indicated.

"Defendant admits that he advertised in the December, 1952, issue of the Greater Kansas City telephone directory that he is a Doctor, by inserting his name therein preceded by the letters 'Dr.', and therein advertises that he operates and conducts an establishment for the treatment of the sickness, diseases and infirmities of the human body, but defendant alleges that he is a Naturopathic Doctor and holds a degree as such and said advertisement contains the further designation of 'N. D.' meaning 'Naturopathic Doctor' and that said advertisement contains nothing to indicate or from which it can be inferred that he claims to be a medical doctor; and

"Defendant admits that he advertises by way of professional cards distributed to the public showing his name preceded by the letters 'Dr.' and followed by the words 'Fellow, National Medical Society' and defendant alleges that he is a member of the National Medical Society and has a certificate from said Society showing him to be a 'Fellow' in said Society, but defendant denies that said cards contain any data or statements that defendant is authorized to and does practice medicine; and

"Defendant admits that he pretends to and does diagnose for the people of Kansas City, Missouri the sickness, diseases and infirmities of the human body and pretends to and does prescribe a treatment, cure for and relief of the same but denies that he diagnoses, treats, or prescribes for such persons by the use of drugs or other means or methods used by medical doctors, physicians and surgeons. Defendant alleges that he diagnoses, treats and prescribes for his patients as a Naturopathic Doctor and uses only the methods used by Naturopathic Doctors, such as foods, diets, air, light and other of nature's remedies.

"Defendant admits that he is not now and has never been a registered physician in Missouri and admits he does not now and never has possessed a license from the State Board of Medical Examiners of Missouri to practice medicine.

"Defendant admits that he has never submitted himself to the State Board of Medical Examiners of Missouri to demonstrate to said Board his moral, educational and professional fitness and ability to practice medicine, or to submit himself to the tests of an examination for such purposes and admits that he is unskilled and uninformed in the practice of medicine and does not possess the qualifications required by law so to do; and denies that he is and has become a continuing, or any, public nuisance, and denies that plaintiff has no adequate remedy at law and denies that the practice in which he is engaged as a naturopathic doctor will result in irreparable or other injury to the health of the public or will be destructive of the general welfare and public policy of the State."

Defendant stated at the trial that he did not claim the above quoted admissions were not true.

William B. Horowitz was suffering from psoriasis, a chronic skin disease, and consulted defendant May 29, 1953. He displayed the condition on his leg to defendant. Defendant stated he knew what witness' trouble was and diagnosed it as liver trouble. He outlined a course of treatment consisting of shots, pills and treatments. Some treatments were to be administered at defendant's place of business, followed by treatment at night by defendant's nurse at witness' home. Defendant wrote down his charges for treating witness: "Gall bladder drainage, $50.00; 18 treatments at $65.00; Change in intestinal flora, $234.00." Defendant informed witness he had treated a Mr. Hite, of Harrisonville, Missouri, for a similar condition for about a year, and that Mr. Hite had paid him approximately $3,000.00 therefor.

John E. Shanahan suffered from histamine headaches. He consulted defendant on May 25, 1953. Defendant examined him and stated the headaches were caused by a nervous condition and spoke of flushing witness' liver. On witness' second visit they discussed the flushing of the liver and

the charges. Defendant told witness relief would not be permanent without the flushing; that the treatments would shock one's system and leave one in a weakened condition; that defendant's wife would stay at witness' home on the night of a treatment to administer shots or whatever was necessary, and mentioned something about giving oxygen and shots to build one back up. Defendant listed his charges at $50 for flushing the liver; $80 for the oxygen, and $87.20 for the shots. Defendant gave witness some capsules to relieve the tension and permit witness to rest and sleep. Witness made four visits to defendant's office; was given capsules and pills, steam baths, treatments on mechanical devices, and, on one occasion, oxygen. Witness paid defendant $5 each on three of his visits.

Ann Brim called at defendant's office in the Summer of 1953, her complaint being that she was nervous, tired and run-down. Defendant made an examination and diagnosed her complaints as "a hyperthyroid condition." He recommended as a treatment some medication and steam baths. They discussed the treatment and the charges. Defendant asked witness $65 for 18 treatments, and for vitamins and calcium and treatments for three months $82.50. She had two treatments, given by defendant's wife, paying $5 for each.

Defendant, called to the stand by plaintiff, refused to answer many of the questions propounded, claiming his privilege against incrimination. However, he testified he was and had been living at 1316 East 63rd Street, Kansas City, Missouri, for approximately eight years prior to September 15, 1955, the date of trial.

Defendant's professional card read: "Phone JA 9201. Conservatory of Health, 1316–18 East 63rd Street, Kansas City 10, Mo. Your perpetual business asset is * * Your Health. Your most envious social asset is * * * Your Health. Prime essential for an active life is * * * Your Health. Guard It. Dr. Robert G. Errington, Fellow, Nat. Medical Society."

Defendant's advertisement in the classified section of the Greater Kansas City telephone directory under "naturopaths" read: "Conservatory of Health. Dr. Robert G. Errington, Naturopathic Physician. 1316 E. 63 JAckson 9201."

This was the extent of the material evidence.

Defendant's position, as we read this record, is that he is a naturopathic physician or doctor; that the practice of naturopathy was lawful at common law and is lawful under Chapter 334, our Medical Practice Act; that regulating the practice of naturopathy contravenes the 14th Amendment to the Constitution of the United States by depriving defendant of the inalienable right to follow a common occupation, and that plaintiff is not entitled to injunctive relief against defendant.

The title of our Medical Practice Act reads: "An Act to regulate the practice of medicine, surgery and midwifery, and to prohibit treating the sick and afflicted without a license, and to provide penalties for the violation thereof." Laws 1901, p. 207.

It is unlawful under said Act for any person not "a registered physician within the meaning of the law to practice medicine or surgery in any of its departments, or to profess to cure and attempt to treat the sick and others afflicted with bodily or mental infirmities, * * * in the state of Missouri, except as herein provided." Section 334.010. Naturopathy or its practice is not made an exception to the provisions of said Act. See State ex rel. Collet v. Scopel, Mo., 316 S.W.2d 515; section 334.150; Chapters 330, 331, 332, 335, 336, 337, 338.

Said Act further provides: "Any person practicing medicine or surgery in this state, and any person attempting to treat the sick or others afflicted with bodily or mental infirmities, and any person representing or advertising himself by any means or through

any medium whatsoever, or in any manner whatsoever, so as to indicate that he is authorized to or does practice medicine or surgery in this state, or that he is authorized to or does treat the sick or others afflicted with bodily or mental infirmities, without a license from the state board of medical examiners shall, upon conviction, be adjudged guilty of a misdemeanor". Section 334.030.

"All persons desiring to practice medicine or surgery in this state, or to treat the sick or afflicted, as provided in section 334.010" are required to meet certain standards and procure from the State Board of Medical Examiners a license to practice medicine and surgery in this State (section 334.040, as amended Laws 1951, p. 727), and to secure registration certificates, and their periodic renewal, from the State Board of Medical Examiners (sections 334.070, 334.-080).

It is stated in State v. Smith, 233 Mo. 242, 135 S.W. 465, 468(4), 470, 33 L.R.A.,N.S., 179: "In the main, the cases regard diagnosis as the test to determine whether a practice or treatment is included in the terms 'medicine' and 'surgery.' This is a practical test. * * * When the practitioner makes such examination of the patient as he regards as sufficient to indicate to him the cause of the trouble, and to indicate its proper treatment, he has diagnosed the case." And, after reviewing the development of the law, the court held (135 S.W. loc. cit. 468(3)) that the words "or to treat the sick or afflicted," made obvious the legislative intent "to include those who practice neither medicine nor surgery in any of its departments, but who profess to cure, and who treat or attempt to treat, the sick by means other than medicine or surgery." See State ex rel. Collet v. Scopel, Mo., 316 S.W.2d 515. It has been stated that "naturopathy is simply one of the methods of practicing medicine." Hahn v. State, Wyo., 322 P.2d 896, 900 [7].

■ The case of State v. Davis, 194 Mo. 485, 92 S.W. 484, 489, 4 L.R.A.,N.S.,

1023, was a prosecution under Laws 1901, p. 207. The court overruled defendant's contention that the Act was unconstitutional and void in that it deprived him of a vested right to practice medicine in this State. Defendant had moved to Illinois after practicing medicine in Missouri for a number of years and would return to Missouri periodically and meet, prescribe for, and treat patients consulting him. The court said: "This law does not undertake to deprive any person of a vested right, for there can be no such thing as a vested right in the practice of medicine. It does not undertake to suppress or prohibit the practice of medicine or surgery, nor to prohibit any particular person from practicing as a physician or surgeon, but it simply undertakes to require the necessary and essential qualifications for that purpose." See also State v. Smith, supra, 135 S.W. loc. cit. 470(6); State v. Evertz, Mo., 190 S.W. 287; State ex rel. Collet v. Scopel, Mo., 316 S. W.2d 515; Hitchcock v. Collenberg, D.C. Md., 140 F.Supp. 894, affirmed 353 U.S. 919, 77 S.Ct. 679, 1 L.Ed.2d 718; Dantzler v. Callison, 230 S.C. 75, 94 S.E.2d 177, appeal dismissed 352 U.S. 939, 77 S.Ct. 263, 1 L. Ed.2d 235. Medical practice acts are upheld as valid exercises of the police power for the protection of the public health and safety.

■ The evidence in the instant case established that defendant advertised that he was a doctor and physician; that defendant maintained a place of business in Missouri where, for a consideration, he consulted with patients, made examinations, diagnosed their condition, prescribed and treated them for the sicknesses, diseases, and infirmities of their bodies. Clearly, what defendant was doing was within the prohibitions of our Medical Practice Act.

■ Is the State entitled to injunctive relief? The evidence in the instant case established, in addition to what is stated in the preceding paragraph, that defendant never possessed a license from the State Board of Medical Examiners to practice

medicine and never had been a registered physician in the State of Missouri; that defendant is unskilled and uninformed in the practice of medicine and does not possess the qualifications required by law to practice medicine in Missouri; and that he had engaged in business as a naturopathic physician or doctor and professed to treat the sick and afflicted and practiced medicine within the provisions of our Medical Practice Act from day to day in Kansas City, Missouri, in 1953 and the last of 1952, if not prior thereto. The facts bring the instant case within State ex rel. Collet v. Scopel, Mo., 316 S.W.2d 515, wherein the judgment of the trial court was reversed and the cause remanded with directions to enjoin defendant from practicing naturopathy on the ground such practice by said defendant constituted a public nuisance. "'A public or common nuisance is an offense against the public order and economy of the state by unlawfully doing any act or by omitting to perform any duty which the common good, public decency, or morals, or the public right to life, health, and the use of property requires, and which at the same time annoys, injures, endangers, renders insecure, interferes with, or obstructs the rights or property of the whole community, or neighborhood, or of any considerable number of persons, even though the extent of the annoyance, injury, or damage may be unequal or may vary in its effect upon individuals.'" State ex rel. Crow v. Canty, 207 Mo. 439, 449, 105 S.W. 1078, 1080, 15 L.R.A.,N.S., 747, quoted in the Scopel case, supra. The case presents an issue involving the public health and safety. State v. Smith, 233 Mo. 242, 268, 135 S.W. 465, 472, 33 L.R.A.,N.S., 179, approving Ex parte Lucas, 160 Mo. 218, 232, 61 S.W. 218, 222, considered that our Medical Practice Act was enacted not alone to punish those violating its provisions but also for the protection of the public and credulous sick persons from those not qualifying under the law to practice medicine or treat the sick and afflicted. The instant record establishes a continuous and habitual violation of our Medical Practice Act and the declared public policy of the State by one not qualified to practice medicine in Missouri; and we conclude that defendant's acts constitute a public nuisance. See the ruling in the Scopel case on this issue.

The decree of the trial court is reversed and the cause is remanded with directions to find the issues for the plaintiff and permanently enjoin defendant in accordance with the prayer of plaintiff's petition.

BARRETT and STOCKARD, CC., concur.

PER CURIAM.

The foregoing opinion by BOHLING, C., is adopted as the opinion of the court.

All concur.