THE STATE EX REL. ROBERT S. COBB v. L. D. THOMPSON, State Auditor. —5 S. W. (2d) 57.

Court en Banc, March 17, 1928.

*Freeman L. Martin, DeWitt F. Lawson* and *Benj. F. Wilson* for relator.

*North T. Gentry,* Attorney-General, and *A. M. Meyer,* Special Assistant Attorney-General, for respondent.

GANTT, J.—By our writ relator seeks to compel respondent to issue a warrant in his favor for $11.50, expenses incurred in connection with the performance of his duties as secretary of the Missouri State Negro Industrial Commission. The pleadings are usual, not challenged, and the facts are admitted as follows:

On February 12, 1918, the Governor appointed certain persons, one from each congressional district, members of an unofficial body, to be known as the Negro Industrial Commission. The persons selected organized and functioned as such. The commission was legalized by the next General Assembly enacting a law creating the Missouri State Negro Industrial Commission (Laws 1919, p. 82), which act is as follows:

"AN ACT to create a negro state industrial commission, defining its duties, authorizing the appointment and fixing the salary of a secretary, and making an appropriation therefor.

"Be it enacted by the General Assembly of the State of Missouri, as follows:

"Section 1. *Creating a state negro industrial commission.* There is hereby created a Missouri state negro industrial commission. This commission shall be composed of sixteen members, one from each congressional district, appointed by the Governor for a period of four years with the advice and consent of the Senate.

"Section 2. *Duties of the commission.* The duties of said commission shall be to discover, ferret out, survey and recommend remedies, educational, moral and industrial, for the betterment of the negroes of Missouri.

"Section 3. *Appropriation—pay of secretary.* A secretary of said commission shall be elected by the members of the said commission

who shall receive a salary of one hundred and fifty dollars per month and there shall be appropriated out of any moneys available and not already appropriated the sum of ten thousand dollars to carry on the work of said commission.

"Section 5. *Members to receive only expense money.* Be it further enacted that the members of this commission shall receive only their actual expenses in serving on the commission."

Thereafter the commission was officially organized and held regular meetings, for which the members received their actual expenses. Relator was elected secretary, and incurred, as such, actual expenses amounting to $11.50, which was certified by the commission to respondent as State Auditor, with a request that he issue a warrant therefor, to be paid by the State Treasurer. Respondent refused and still refuses to issue such warrant.

Succeeding governors appointed new commissioners at the end of each four-year period, and succeeding legislatures made appropriations to carry out the provisions of the act. Respondent, as State Auditor, regularly issued warrants in payment of the salary of the secretary and the actual expenses of the commissioners. The State Treasurer paid the warrants.

Four years after the enactment of the law, its author introduced a bill to repeal it, which was defeated. Since the enactment of the law the commission has been functioning as one of the state boards.

Respondent contends the commission expired at the end of the four-year period by the terms of the act.

Relator contends the intention of the Legislature was to create a permanent commission.

The validity of the law is not challenged. There is no conflict in its provisions, and it is not afflicted with either clerical errors, ambiguous words or phrases. Relator points to no defect in the language of the statute. His contention is limited to the claim that the phrase "and until their successors are appointed and qualified" was inadvertently omitted after the word "Senate" in the last line of Section 1 of the act. The reasons given are:

(a) That it would be "absurd, unjust and unreasonable to charge that the Legislature intended to and did enact a statute to discover, ferret out, survey and recommend remedies, educational, moral and industrial, for the betterment of the negroes of Missouri for only a period of four years."

(b) "That the work to be accomplished by the commission is an ever-changing and continuous one; and that it would be absurd and unreasonable to assume that the Legislature intended to remedy, rectify or ameliorate their present condition wholly indifferent to and without regard for their future condition and welfare."

We are unable to discover an absurdity in the creation by the Legislature of either a permanent or temporary commission for the purposes named. Much may be said in favor of either.

Concededly, the statute is not afflicted with any of the ills which make it necessary to call to our aid any of the canons of construction to determine the intention of the Legislature.

The title to the act contains no word indicating an intention to create a permanent commission. Even if it did so, we would not be justified in resorting to it to broaden the meaning of the plain and simple words of the act. The rule is well stated, as follows:

"A statute is not to be read as if open to construction as a matter of course. It is only in the case of ambiguous statutes of uncertain meaning that the rules of construction can have any application. Where the language of a statute is plain and unambiguous and its meaning clear and unmistakable, there is no room for construction, and the courts are not permitted to search for its meaning beyond the statute itself." [25 R. C. L. 957; Trefny v. Eichenseer, 171 S. W. l. c. 932; Grier v. Ry., 286 Mo. 523, l. c. 534, 228 S. W. 454; State ex rel. v. Board of Education, 294 Mo. 106, l. c. 115, 242 S. W. 85; R. S. 1919, sec. 7058.]

A standard text states the rule as follows:

"If the words (of the statute) are free from ambiguity and doubt and express plainly, clearly and distinctly the sense of the framers of the instrument, there is no occasion to resort to other means of interpretation. It is not allowable to interpret what has no need of interpretation. The statute itself furnishes the best means of its own exposition; and if the sense in which words were intended to be used can be clearly ascertained from its parts and provisions, the intention thus indicated will prevail without resorting to other means of aiding in the construction." [2 Lewis-Sutherland, Stat. Const. (2 Ed.) p. 698.]

The statute considered, we think the lawmakers were of the opinion that four years was ample time in which to "ferret out" all the available remedies, educational, moral and industrial, for the betterment of the negroes of Missouri. They could not be convicted of having committed an absurdity if they experimented by creating a temporary commission. Even though we suspected the Legislature intended to create a permanent commission (which we do not), we would not be authorized to so hold contrary to the meaning of the language of the act, which is free from ambiguity and doubt. [2 Lewis-Sutherland, Stat. Const. (2 Ed.) p. 701; St. L. I. M. & S. Railroad v. Clark, 53 Mo. l. c. 216.]

Relator is not seeking a construction of the act, but insists that we amend it by adding the words "and until their successors are ap-

pointed and qualified." This we are without authority to do. That power is assigned to the legislative branch of the government. In 2 Lewis-Sutherland, Stat. Const. (2 Ed.) p. 737, it is said:

"Where the omission is not plainly indicated and the statute as written is not incongruous or unintelligible and leads to no absurd results, the court is not justified in making an interpolation."

To the same effect: Johnson v. Barham, 99 Va. 1. c. 310, 38 S. E. 136, where it is said:

"It is safer in a case which admits of doubt, when the court finds itself at all involved in conjecture as to what was the legislative intent, that the particular object which may reasonably be supposed to have influenced the Legislature in the particular case should fail of consummation than that courts should too readily yield to a supposed necessity, and exercise a power so delicate, and so easily abused, as that of adding to or taking from the words of the statute."

In this connection it is argued that the construction placed on the act by the executive and legislative departments should be given great weight in determining the intention of the Legislature. This is the general rule. However, an executive or legislative construction can only be invoked "where the language of the statute is ambiguous or doubtful." [State ex rel. Gass v. Gordon, 266 Mo. 1. c. 412, 181 S. W. 1016; State ex rel. Nat. Life Ins. Co. v. Hyde, 292 Mo. 342, 1. c. 355, 241 S. W. 396; Trefny v. Eichenseer, 171 S. W. 1. c. 923; Folk v. St. Louis, 250 Mo. 1. c. 141, 157 S. W. 71.]

We hold the Missouri State Negro Industrial Commission expired at the end of the four-year period, as did the office of its secretary. It follows respondent is without authority to issue warrants in payment of either the expenses of the commissioners or the salary and expenses of the secretary. The alternative writ is quashed and peremptory writ denied. All concur.