STATE OF MISSOURI at the Relation of WILSON BELL, State Treasurer, Appellant, v. PHILLIPS PETROLEUM COMPANY, a Corporation.— 160 S. W. (2d) 764.

Division One, April 16, 1942.

*Roy McKittrick,* Attorney General, and *Lawrence L. Bradley,* Assistant Attorney General, for appellant.

*Ewing, Ewing & Ewing, H. D. (Don) Emery, R. L. Foster, Darlene G. Anderson* and *D. E. Hodges* for respondent.

362

DALTON, C.—This is an action for collection of delinquent motor vehicle fuel tax, interest and penalties, under Article 2, Chapter 45, R. S. 1939. A jury was waived and the cause submitted to the court. The court found for defendant on counts 1 and 2 (covering the tax claimed on certain gasoline sold and delivered in this State in 1938 and 1939). Other counts were disposed of by agreement between the parties. Judgment was entered for defendant on counts 1 and 2 and plaintiff has appealed.

The facts, in part stipulated, are as follows: In 1938 and 1939, defendant "was licensed as a distributor of motor vehicle fuels, to-wit, gasoline, in the State of Missouri, and had on file with the State Inspector of Oils its election to pay gasoline tax on the basis provided in Section 7819, R. S. Mo. 1929," (now Section 8437, R. S. 1939, Mo. Stat. Ann., Sec. 7819, p. 5257). It "maintained and operated approximately one hundred two (102) bulk storage plants throughout the State of Missouri. Said bulk plants were used for the purpose of storing gasoline and other products in distributing the same therefrom to retail dealers in the State of Missouri, and in some instances in adjacent states. All of said bulk plants were supplied with gasoline by shipments by railroad tank car or by tank trucks from the storage facilities of defendant at the Kansas City, Kansas, refinery of defendant, the Okmulgee, Oklahoma, refinery of defendant, the Jefferson City, Missouri, terminal, and the East St. Louis, Illinois, terminal of the Phillips Pipe Line Company. During the years 1938 and 1939 and prior years, defendant paid the gasoline tax on the basis provided in Section 7819, R. S. Mo. 1929, on all gasoline delivered to said bulk plants.

"During the years of 1938 and 1939 defendant, from its storage facilities maintained at its refinery in Kansas City, Kansas, and at the terminal of the Phillips Pipe Line Company in East St. Louis, Illinois, transported and delivered to retail dealers in the State of

Missouri various quantities of gasoline or motor vehicle fuel. Said retail dealers to whom gasoline was delivered by defendant during the years 1938 and 1939, were independent proprietorships. Said sales of gasoline made by defendant to said retail dealers were made upon the order of the retail dealer, either by mail, telephone or upon a preconceived arrangement to deliver a certain quantity of gasoline each week, or other period of time, to the retail dealer. The gasoline so sold and delivered into Missouri was listed on a loading ticket, prepared at the storage facilities of defendant Kansas City, Kansas, and East St. Louis, Illinois, reflecting that said gasoline was destined to be delivered into the State of Missouri, and was transported and delivered by defendant in its own motor vehicles from Kansas City, Kansas, and East St. Louis, Illinois, to the storage tanks of the retail dealers in Missouri who purchased same. Upon a sale and delivery to the retail dealer, the driver of defendant's motor vehicle in which said gasoline was transported into Missouri invoiced to the said retail dealer the gasoline so delivered. The purchase price, plus the gasoline tax due on the gallons invoiced and delivered to said retail dealer, was either paid by the retail dealer upon delivery or charged to his account on books of defendant in anticipation of payment being made therefor at a later date.

"In pursuance of the activities outlined . . . defendant, during the year 1938, transported from its refinery in Kansas City, Kansas, and from the terminal of Phillips Pipe Line Company in East St. Louis, Illinois, and sold and delivered to retail dealers in Missouri 14,012,200 gallons of gasoline, making timely reports of the items comprising said quantity to the State Inspector of Oils of the State of Missouri, and paid the full amount of the tax due thereon after deducting three per cent (3%) of the gross number of gallons transported, sold and delivered into the State of Missouri. This three per cent (3%) deduction amounted to 420,366 gallons of gasoline. Thereafter, on May 28, 1940, the State Inspector of Oils disallowed said three per cent (3%) deduction and assessed the gasoline tax on 420,366 gallons of gasoline against defendant in the sum of Eight Thousand Four Hundred Seven Dollars and Thirty-two Cents ($8,407.32), and assessed five penalties, each in the amount of five per cent (5%) of the tax, for failure to pay said tax on or before the 25th day of the month following the month in which the gasoline was transported into Missouri and sold and delivered to said retail dealers. The penalties were assessed in the total sum of Two Thousand One Hundred One Dollars and Eighty-five Cents ($2,101.85)."

The facts stipulated, as to count 2, are similar to those with reference to count 1 except that the three per cent deduction upon such sales in 1939 amounted to 411,302 gallons and the tax assessed was $8,226.04, exclusive of interest and penalties.

Over defendant's objection, and as evidence of an administrative interpretation of Sec. 7819, R. S. 1929 (now Sec. 8437, R. S. 1939), Roy H. Cherry, State Inspector of Oils, was permitted to testify that, during his eight years in office as such officer, he had not allowed a three per cent deduction by distributors on "direct deliveries," that is, on deliveries made from outside the State by truck to distributors or dealers in this State, where the distributor making the delivery sustained no handling loss and invoiced such dealer or distributor for the full number of gallons of gasoline so transported and delivered. He further referred to "direct deliveries" as "contradistinguished from a delivery to the transporter's own storage facilities in this state" and then a redelivery therefrom to a retailer or distributor in this State.

The cause was defended on the theory that during the years 1938 and 1939 defendant was licensed as a distributor of motor vehicle fuels in the State of Missouri and had filed its election to pay motor vehicle taxes on the alternative basis provided in Sec. 7819, supra, now Sec. 8437, supra, and that defendant had paid all such taxes on such basis and that no further such taxes could be assessed or collected on the gasoline covered by the three per cent deduction made on the gross number of gallons so transported, sold and delivered in this State.

The issue presented involves the construction of said Sec. 8437, supra, a part of which section is as follows: "Any person, distributor or dealer, as defined by this article, may elect to compute and pay the license tax provided by law to be paid on motor vehicle fuels in this state, on the gross number of gallons of such fuels received as shown by invoices thereof, or manufactured, compounded or handled by such person, distributor or dealer for use, sale or distribution within this state and on which such license tax shall not have been previously paid instead of on the number of gallons sold, and be relieved thereby from keeping accounts and making and filing statements and making payment of such tax at the time and in the manner provided by sections 8416, 8417 and 8418 of this article, by filing their election so to do with the state inspector of oils, and, if such person, distributor or dealer shall thereafter on or before the 25th day of each and every month make and file with said inspector, on forms to be prescribed by him, a statement under oath of the total number of gallons of motor vehicle fuels so received, manufactured, compounded or handled by them during the preceding calendar month accompanied with a draft payable to the state treasurer for the payment of the tax thereon, such person, distributor or dealer shall be entitled to deduct three per cent of the gross number of gallons therefrom in computing and paying said tax."

At the close of all the evidence the plaintiff requested the court to declare the law to be "that a licensed distributor of motor

vehicle fuel, who has elected to pay the motor vehicle fuel tax on the alternative basis provided in Section 8437, R. S. Missouri, 1939, and who transports gasoline from without this state, into the State of Missouri, making direct delivery of said gasoline to another engaged in the selling of gasoline in this state for use in motor vehicles upon the highways of this state, is not entitled to deduct three per cent (3%) of the number of gallons of gasoline so transported and delivered in computing and paying the tax due. The term 'direct delivery' used in this declaration means a delivery to another person engaged in the selling of gasoline in this state for use in motor vehicles upon the highways of this state, during the interstate journey and at the terminus of the interstate journey in this state, as distinguished from a delivery into storage facilities in this state of the transporter of said gasoline and then redelivery from said storage facilities by the transporter to another person engaged in the selling of gasoline in this state for use in motor vehicles upon the highways of this state.''

Error is assigned on the refusal of the declaration of law, supra, and on the holding that respondent was entitled to take the deduction claimed upon the gross number of gallons of gasoline sold on the ''direct deliveries.''

Appellant contends that ''a licensed distributor of gasoline, electing to compute and pay its gasoline tax on the alternative basis provided in Section 8437, R. S. 1939, is not entitled to take the three per cent deduction allowed by said statute, unless the gasoline upon which the deduction is claimed, is reported and the tax due thereon is computed and paid on the basis provided in said statute, and unless said gasoline was, in fact, received as shown by invoices thereof, or manufactured, compounded or handled, by such distribution, within the State of Missouri.'' Appellant concedes that this case ''involves the right of respondent to claim a deduction of three per cent on the gross number of gallons of gasoline it transported into this state and sold and delivered to filling stations during the years 1938 and 1939,'' but appellant says that gasoline sold on ''direct deliveries'' was not ''received'' or ''handled'' by respondent within this State and that the deduction may not be taken upon the gross gallonage so sold and delivered, even though respondent had on file with the State Inspector of Oils the election to pay the tax upon the alternative basis mentioned.

Respondent, was (during said years) a licensed distributor of motor vehicle fuels. [Sec. 8411, R. S. 1939, Mo. Stat. Ann., Sec. 7793, p. 5246.] Such distributor was required to ''pay to the state treasurer an amount equal to two (2c) cents for each gallon of motor vehicle fuels . . . shipped, transported or imported by such distributor into and distributed or sold by him within this state . . .'' [Sec. 8413, R. S. 1939, Mo. Stat. Ann., Sec. 7795, p. 5246.] The purpose of the tax is to provide funds for construction and maintenance of highways and

the tax applies to ''fuels . . . used in motor vehicles of public highways of the state.'' [Sec. 8412, R. S. 1939, Mo. Stat. Ann., Sec. 7794, p. 5246.] All gasoline distributed and sold is ''deemed to have been sold for use in operating motor vehicles upon the public highways of this state,'' but provision is made for proof of non-highway use and for refund of the tax to such purchasers. [Sec. 8423, R. S. 1939, Mo. Stat. Ann., Sec. 7805, p. 5251.] Provision is further made for the collection of a tax on all fuel that is used to operate vehicles upon the highways of the State on which the tax has not been paid. [Sec. 8432, R. S. 1939, Mo. Stat. Ann., Sec. 7814, p. 5255.]

Appellant says ''the intention of the law was to exact from the persons engaged in the distribution of gasoline in this state, tax revenue in a sum equal to two cents on every gallon of gasoline sold and subsequently used on the highways of Missouri'' and ''to exact *and retain* a tax of nothing less than two cents per gallon on gallons used in propelling vehicles on the public highways of this state.'' In the case of State ex rel. Winn, State Treasurer, v. Banks, 346 Mo. 1177, 145 S. W. (2d) 362, 365 (3-5) this court, with reference to said act, said: ''It is apparent, from reading the provisions of these sections together, as they now stand, that the intention of the Legislature was to require the payment of two cents on each and every gallon of gasoline sold or used in this state to operate motor vehicles over the roads, streets or highways of this state,'' yet in that case the court remanded the cause so that it might be determined whether or not the defendant had, in fact, filed an election to pay the tax under the alternative method provided by Sec. 8437, supra, and whether it was, therefore, entitled to have the tax computed and paid under such method.

Appellant insists that said Section 8437, supra, permits no deduction under the facts of this case, because the purpose of the deduction is ''to cover shrinkage losses from evaporation'' and ''the statutes do not contemplate that a distributor suffering no loss and having no opportunity to suffer a loss be permitted to make a tax profit'' (the tax on the gallonage deducted having been collected from or charged to the retail dealers, see stipulated facts). Appellant asserts, ''all respondent seeks to do is make a tax profit at the expense of the retail dealer.'' A tax profit is assumed, although, the agreed facts do not show collection for all merchandise sold or for all of the tax added to sale price.

In support of the theory that the purpose of the deduction is to cover shrinkage losses from evaporation, appellant says that, where a ''distributor pays his tax on the number of gallons of gasoline he receives, manufactures, compounds or handles within this state, . . . it may be some time, even months, depending upon his capacity for storage and volume of sales, before he would sell this gasoline and have an opportunity, as a matter of business practice, to pass the tax burden on to the purchaser.'' It is then argued that

the deduction was "given in order that there would be no discrimination made between those engaged in the same business, but who compute and pay their taxes on a different basis, and in order to conform to the avowed policy of the act to only exact and retain a tax revenue in a sum equal to two cents on each gallon of gasoline that was actually used to propel motor vehicles upon the highways."

The purpose of granting the three per cent deduction (in the event the distributor elects to pay the tax on the gross number of gallons received, manufactured, compounded or handled, rather than on the number of gallons sold) is not stated in the act, however, two inducements are offered to secure payment of the tax on the basis of the gross number of gallons of gasoline received, manufactured, compounded or handled. They are (1) relief from keeping accounts and making and filing statements and making payment of such tax at the time and in the manner provided in the other sections referred to, and (2) the right to deduct three per cent of the gross number of gallons (so received, manufactured, compounded or handled) in computing and paying the tax. There is no discrimination against any person, distributor or dealer, since any or all may so elect to compute and pay the said tax. A choice of method of payment is granted.

We think it is apparent from Sec. 8437, supra, that the purpose of the inducements offered is to secure an early payment of the tax on the alternative basis offered therein, "instead of on the number of gallons sold." If appellant's interpretation is correct, the purpose of giving the right to take a 3% deduction on the gross number of gallons (the alternative basis of computing and paying the tax) was to make the alternative basis correspond with the sales basis. In other words, so that there would be no real reason for choice between the two methods, that is, the result in either case would be approximately the same, and the two methods would be equalized so that one method would have no real advantage over the other (both equally burdensome). Appellant argues that, since the purpose of the deduction on the alternative basis is to cover loss from evaporation (the "average evaporation loss"), where no loss is suffered by evaporation there can be no deduction by distributors who have elected to pay on the alternative basis; that the alternative basis has no application to "direct deliveries," because on such sales there is no evaporation loss; and that respondent did not undertake to compute and pay the tax until after *it had sold* the gasoline, while the deduction was only allowed, where the tax was computed and paid *in advance of sale*. We do not so read the statute.

Again, under appellant's interpretation, even after making the election provided for and allowed by the statute, a distributor would still have to pay "on the number of gallons sold" on "direct deliveries" and the alternative method would apply only to a part of the distributor's business, to-wit, that part of the business where the

gasoline was received or handled in this State by delivery to the distributor's own storage facilities and then redelivered to dealers or distributors. We cannot concur in such an interpretation of the statute, since the statute does not so provide. If the election is made it applies to all of the distributor's business included by the words used in the statute.

Appellant next says that, "respondent did not receive, manufacture, compound, or handle within this state the gasoline in question." In support of the claim that gasoline sold on "special deliveries" is not "*handled*" in this State within the meaning of said statute, appellant says the word "*handled*" is used in the commercial sense of "buy and sell" and that gasoline is not "handled" in this State, unless it is bought in this State, take possession of in this State and held in possession until sold and, therefore, that "direct delivery" sales from respondent's refineries without the State to dealers in the State do not come within the meaning of either the word "received" or the word "handled."

We think it appears from the stipulated facts that the gasoline sold and delivered (on the so-called "direct delivery" sales) was transported by defendant in commerce into and within this State for the purpose of such sale and delivery; that it was delivered to dealers (purchasers) in this State; that possession was transferred to such purchasers in this State; that the sales were completed by delivery at point of destination in this State, since the gasoline so delivered was not *invoiced* to the purchaser, until such delivery was made, and at which time the gasoline was paid for in this State, or charged to the dealer's account in anticipation of payment at a later date. Among the definitions for the word "handled," Webster's New International Dictionary, Second Edition, gives the following: "5. To manage; control; direct; as, he handled his regiment finely; he is a boy who is hard to handle. 6. To deal with; to act upon; to perform some function with regard to; as, much mail matter was handled. 7. To have passed through one's hands; to buy and sell; to deal or trade in; as, they handle only fruit." It is our conclusion that, under the facts stipulated, the gasoline sold on "direct deliveries" was "handled" commercially in this State within the meaning of said Section 8437, supra. The trial judge in the trial, in effect, used the word "handling" in this sense when he said: "The contention of the state is, that such *handling* (without storing it in facilities of their own in Missouri) . . . does not entitle them (respondent) . . . to pay and receive the 3% deduction." Witness Cherry, in effect, used the word "handling" in this sense, when in defining "direct deliveries" he said, "It means a delivery made direct to a distributor or dealer, in this state, in which the person making the delivery sustains no *handling* loss and invoices such dealer or distributor for the number of gallons of gasoline."

Appellant insists, however, that we may not disregard the administrative interpretation given to Section 8437, supra, and cites Automobile Gasoline Company v. City of St. Louis, 326 Mo. 435, 32 S. W. (2d) 281, 283, and In re Estate of Bernay v. Major, 344 Mo. 135, 126 S. W. (2d) 209. In the first case the rule is stated as follows: "The construction of a statute by those charged with the duty of enforcing it, when it has long prevailed, while not binding upon the courts, is entitled to weight where the meaning of the statute is uncertain." [32 S. W. (2d) 281, 283.] We find no ambiguity or uncertainty in this statute. It expressly authorizes the use of the alternative method mentioned in said section, instead of the basis of gallons sold. We do not think the meaning of the word "handled" is indefinite or uncertain. We think the gasoline sold on "direct deliveries" was "handled" in this State. If Section 8437, supra, is clear and unambiguous, it must be construed in accordance with its manifest intent and we may not search for a meaning beyond the statute itself. [State ex rel. Cobb v. Thompson, 319 Mo. 492, 5 S. W. (2d) 57, 59.] In view of the circumstances, the administrative interpretation given to Section 8437, supra, cannot control in this case.

We conclude that respondent, having elected to pay the tax on the basis of the gross number of gallons of gasoline "received . . . or manufactured, compounded or handled . . . for use, sale or distribution within this state . . . instead of on the number of gallons sold," was entitled to make the three per cent deduction on the gross number of gallons of gasoline sold on "direct deliveries," since such gasoline was "handled" by respondent within this State, within the meaning of Sec. 8437, supra.

The trial court did not err in refusing the declaration of law tendered by appellant and it did not err in its finding for respondent. The judgment is affirmed. *Hyde* and *Bradley, CC.,* concur.

PER CURIAM:—The foregoing opinion by DALTON, C., is adopted as the opinion of the court. All the judges concur.